IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CHESTER R. MCMILLIAN, | ) | Case No. CIV 07-078-S-EJL |
| | ) | |
| Plaintiff, | ) | MEMORANDUM DECISION AND |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| GEM COUNTY, IDAHO; GEM COUNTY | ) | |
| SHERIFF'S DEPARTMENT; CLINT | ) | |
| SHORT, Gem County Sheriff; CRAIG | ) | |
| HOODMAN, Deputy Gem County Sheriff; | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court in the above-entitled matter are the Defendants' Motion for Summary Judgment (Docket No. 29) and motions to strike (Docket Nos. 38 and 39). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Factual Background

On February 17, 2005, Deputy Craig Hoodman ("Deputy Hoodman") was dispatched to a hit-and-run accident site at Plaza Road and Fuller Road in Gem County.

Deputy investigated the scene of where a vehicle had crashed though a fence and had left the area.  The landowner's horses had escaped from the pasture where the fence was down.  A hubcap with a GMC logo was found as well as a side mirror, pieces of reflectors and lights and red paint on a railroad tie.

Deputy Hoodman proceeded with the gathered evidence to Dan's Auto Body Repair Shop in Emmett. The owner of the shop identified the vehicle parts and said they came from a 1988 Chevrolet pickup owned by Chester McMillian ("McMillian").  The owner said McMillian brought his truck in around noon that day for an estimate and that McMillian had told him he drove off an embankment.  The body shop owner thought the truck looked like it had gone through a barbed-wire fence with extensive damage on the right side of the truck.  The body shop owner gave Deputy Hoodman the VIN for the truck.  Deputy Hoodman had dispatch run the VIN and indicated it was a red, 1988 Chevrolet pickup registered to McMillian at 3438 Frozen Dog Road, Emmett, Idaho.

Deputy Hoodman proceeded to the residence of McMillian.   This was approximately six and one-half hours after the accident.   The damaged vehicle was parked in the driveway.  McMillian came out of the house to talk with Deputy Hoodman. A video camera was running while Deputy Hoodman inquired of McMillian.  The video camera does not move so it did not capture all actions, however the audio portion was recording the entire interaction between Deputy Hoodman and McMillian.  The Court observed the video and summarizes the interaction as follows:

Deputy Hoodman asked McMillian why he did not report the accident and McMillian answered that he had no reason, but that he had suffered a brain trauma in the past from paint fumes.  Plaintiff was cooperative and retrieved his drivers' license from his house, got his registration and insurance papers out of the pickup.  Plaintiff indicated he was on medication but was okay to drive and that the medications had not bothered him before.  McMillian was coherent, compliant and his answers were appropriate to the questions being asked by Deputy Hoodman.  Plaintiff went again into his house to get his medications to show the Deputy.  Plaintiff indicated he had placed calls into his doctor regarding the medication.

McMillian stated he did not remember what happened when he crashed or that he had broke a water line.  McMillian said after the accident he went to his cousin's and then went to buy a coat.  McMillian thinks the medication began to build up in his system and that is when he had problems. McMillian was sitting on the back bumper of his pickup at this time.

Deputy Hoodman indicated it was a violation of the law not to report the accident. Plaintiff stated it never crossed his mind to report the accident to law enforcement. Deputy Hoodman reported the extent of the damage to the third party's property and the fact that McMillian had failed to inform the deputy that he had also gone to the body shop to get an estimate for repairs which made it look like he was trying to cover up the accident.  Deputy Hoodman informed McMillian that he is going to be placed under arrest

for leaving the scene of an accident.  McMillian becomes defiant and says "No."  He starts walking off and says he can't go down to the jail as he "has too many medications and everything."

Deputy Hoodman again informed McMillian he was going to be placed under arrest and McMillian stated he could not be handcuffed because he had so many surgeries.  McMillian told the officer he was not going and began walking towards his house.  The deputy stopped McMillian and told him to place his arms behind his back.  McMillian said he was not going to place his arms behind his back because "You guys" are going to hurt me."  The officer again asked McMillian to stop resisting and pushed the Plaintiff back towards the pickup.  McMillian was non-compliant with the officer and stated he was not going to jail as he has not done anything to go to jail for.  Deputy Hoodman told Plaintiff to take a seat by the truck.  Deputy Hoodman requested backup.  Plaintiff started walking towards his house.  Deputy Hoodman grabbed his taser from his vehicle and warned McMillian that he was going to taser him if he did not get on the ground.   It is disputed whether Plaintiff stopped walking towards the house, but it is undisputed that Plaintiff did not get on the ground as ordered by the Deputy.  The Plaintiff is out of the video picture when the taser is fired.  Deputy Hoodman claims Plaintiff did not stop walking towards the house.  Plaintiff claims in his affidavit that he was shot with the taser after he stopped.  It is also undisputed that Plaintiff stated he had two heart attacks right before the officer deployed the taser.  Plaintiff then fell to the

ground and asked to be taken to the hospital as his heart was hurting.  Deputy Hoodman called for emergency medical services and McMillian was taken to the hospital and released later that day.

Deputy Hoodman claims he used the taser because McMillian was not complying with his orders and for officer safety as he was concerned McMillian may have a weapon in the house and if he entered the house, he would not come out again. Deputy Hoodman only shot the taser once and it cycled for approximately 5 seconds.  Deputy Hoodman is certified in how to properly use a taser and is also a certified taser instructor.  The Gem County Sheriff's Department had written policies regarding the use of force and the use of a taser at the time of this incident.

McMillian was charged with two misdemeanor citations for four separate violations:  resisting and obstructing arrest in violation of Idaho Code § 18-705; leaving the scene of an accident in violation of Idaho Code § 49-1301; failure to notify law enforcement of an accident in violation of Idaho Code § 49-1305; and inattentive and careless driving in violation of Idaho Code § 49-1401(3).

It is undisputed that Deputy Hoodman had the statutory authority to arrest McMillian for leaving the scene of an accident.  Idaho Code § 49-1405(e).

As a result of a plea agreement, McMillian pled guilty to an amended charge of failure to stop or give information following an accident that results in damage to property in violation of Idaho Code § 49-1405.

MEMORANDUM DECISION AND ORDER – 5

Plaintiff filed his Complaint alleging negligence on the part of Deputy Hoodman's attempt to arrest Plaintiff based on a lack of training and use of excessive force; constitutional violations of excessive force in violation of Plaintiff's Fourth and Fourteenth Amendment rights; and Section 1983 claims of deprivation of equal protection pursuant to the Fourteenth Amendment and deprivation of Plaintiff's substantive due process rights guaranteed by the Fourteenth Amendment.  Plaintiff alleges that as a result of the taser shock, he has suffered chest pain, seizures and four broken sternal sutures. Plaintiff will continue to suffer from a dehiscued sterum that cannot be repaired.

Plaintiff has named Gem County as a defendant as well as Gem County Sheriff's Department, Clint Short in his official capacity as Sheriff and Craig Hoodman in his official capacity as a Deputy Gem County Sheriff.  The Defendants deny Plaintiffs claims and move for summary judgment.

## Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)).  The Ninth Circuit cases are in accord.  See, e.g., British

---

[1] See also, Rule 56(e) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## Analysis

Gem County Sheriff's Department

"Gem County Sheriff's Department" is not a legal entity.  Maxwell v. Henry, 815 F. Supp. 213, 215 (S.D. Tex. 1993.  Nor is the Gem County Sheriff's Department a "person" for purposes of § 1983 litigation.  Vance v. County of Santa Clara, 928 F. Supp. 993 (N.D. Cal. 1996).  Plaintiff has also sued "Gem County" which is the proper legal

entity to be sued in this type of case.  Therefore, as a matter of law, the claims against Defendant Gem County Sheriff's Department must be dismissed.

Constitutional Claims and Section 1983 Claims

The Constitutional violations and the 1983 claims are intertwined.  Basically, Plaintiff is claiming Deputy Hoodman unlawfully seized him and used excessive force by using the taser.  The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties.  See Wyatt v. Cole, 504 U.S. 158, 161 (1992).  To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law.  Id.   Acting under color of state law is "a jurisdictional requisite for a § 1983 action."  West v. Atkins, 487 U.S.  42, 46 (1988).  In this case, it is not disputed that Deputy Hoodman was acting under color of state law when he responded to the dispatch call.  Therefore, the question becomes, did Deputy Hoodman's actions deprive Plaintiff McMillian of a right, privilege or immunity secured by the Constitution or federal law.

Qualified Immunity

Defendant Deputy Hoodman has raised the defense of qualified immunity.  Police officers are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982).  The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."  Saucier v. Katz, 533 U.S. 194, 200, 202 (2001).  On the other hand, this privilege allows redress where clear wrongs are caused by state actors. Id.  "The privilege is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id. at 200-01.  "As a result, [courts] have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," long before trial. Id. at 201, see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (citing Hunter v. Bryant, 502 U.S. 224 (1991)).

The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201, (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified immunity."

Saucier, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208. Plaintiff bears the burden of establishing the rights violated were "clearly established." Houghton v. South, 965, F.2d 1532, 1534 (9th Cir. 1992).

"[S]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, the Court will analyze the specific constitutional rights Plaintiff alleges were violated by Deputy Hoodman.

A.  Unreasonable Seizures Based on Excessive Force

In Graham v. Connor, 490 U.S. 386, 395 (1989), the Supreme Court held that a claim for unreasonable seizure of a person due to excessive force should be analyzed under the Fourth Amendment's "reasonableness" standard, rather than as a substantive due process claim. "Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against

counterveiling governmental interests at stake." Id. at 396.  The Ninth Circuit has said a court must ask "whether under the circumstances, 'including the severity of the crime at issue, the suspect poses an immediate threat to the safety of the officers or others, or whether he is actively resisting arrest or attempting to evade arrest by flight.'" Billington v. Smith, 292 F.3d 1177, 1184 (9th Cir. 2002) (citations omitted).   "The 'reasonableness' of a particular situation must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham at 396 (citations omitted). This standard is based in part on the reality "that police officers are often forced to make split second judgments -- in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 397.  "The reasonableness inquiry is objective, without regard to the officer's good or bad motivations or intentions." Billington at 1184.

Plaintiff argues that under a reasonableness analysis, Deputy Hoodman did not act reasonably when he deployed the taser with knowledge of Plaintiff's precarious physical condition.  Defendants maintains the use of the non-lethal taser was reasonable under the circumstances.   The Court agrees with the Defendants.

Taking the facts in the light most favorable to the Plaintiff, the facts alleged do not show that the deputy's  conduct violated a constitutional right.   In applying the factors set forth in Billington, the Court finds Deputy Hoodman's actions were reasonable.  First, as to the severity of the crime at issue, the Idaho statutes have defined the crime of leaving

the scene of an accident a serious crime for which arrest is appropriate.  Idaho Code § 49-1405(e).  Therefore, there can be no claim of a violation of Fourth Amendment rights for an unreasonable seizure based upon an unlawful arrest.   Second, the suspect did pose a potential immediate threat to the safety of the officer or others.  McMillian was adamant he was not going to be arrested or go to jail.  While his earlier conversations with the deputy had been cooperative, the attitude and behavior of McMillian changed after he was told he was under arrest and the deputy was correct in wanting to prevent the Plaintiff from returning to his house.  This incident occurred in a rural environment and the law enforcement officer did not personally know the Plaintiff.  The deputy did not know whether Plaintiff had a firearm or other possible weapons in his residence that might place the deputy's safety in danger.  Moreover, in this case the Defendant claimed his medication was affecting him and led to the accident.  The Defendant continued driving that day even after the accident and the officer could easily justify arresting the Plaintiff to keep him from driving again that day while he may still be impacted by the medication.

Third, in evaluating whether the suspect he was actively resisting arrest or attempting to evade arrest by flight the answer is clearly yes based on the video/audio tape of the events.   Plaintiff was resisting arrest and was non-compliant with the officer's instructions. If Plaintiff had stayed sitting at the back of the truck, the analysis would be different.  Instead, Plaintiff verbally informed the officer he was not going to jail because

he had done nothing wrong, began walking to his house and he did not obey the deputy's instructions to stay at the truck or on the ground.

Plaintiff wants the Court to focus on the precarious physical condition of the Plaintiff. The condition of the Plaintiff actually known to the deputy does not impact the above analysis. While it is true Deputy Hoodman knew Plaintiff had been on some medication and had suffered a brain trauma some time in the past, the deputy did not know Plaintiff personally, the Plaintiff answered the deputy's questions coherently, the Plaintiff did not show physical signs of weakness and Plaintiff's explanations of not wanting to be arrested because the officer would hurt him was not adequately explained to the officer. Plaintiff never asked if he could put his hands in front as putting my hands behind his back would possibly damage McMillian's sternum. Instead, Plaintiff just said no to the deputy's instructions without explanation and refused to be placed under arrest. Then a split second before the officer deployed the taser, the Plaintiff informed the deputy he had suffered two heart attacks. The timing of this medical information and the Plaintiff's failure to comply with the officer's orders to get on the ground, did not provide a reasonable amount of time for the deputy to change his course of conduct. While Plaintiff's briefing states the Plaintiff is a disabled veteran, these facts and the reasons why he was disabled were not disclosed to the officer so cannot be considered in determining whether the deputy acted reasonably and/or violated Plaintiff's Constitutional rights.

While Plaintiff maintains the use of the taser was excessive force, the Court disagrees.  The use of the taser was an appropriate level of force for Plaintiff's non-compliance.  The effects of a taser are generally temporary and a taser is considered to inflict less pain than other forms of force.  <u>Beaver v. City of Federal Way</u>, 507 F. Supp. 2d 1137 (W.D. Wash. 2007).  Under the circumstances of a non-compliant person who has been told he is under arrest, the actions of the Plaintiff moving towards his house would be perceived by a reasonable officer as a substantial risk to the officer's safety. While it may have been possible for the Deputy to have used less force, that is not the relevant inquiry. The officer need not use the least intrusive force available, but must use reasonable force based on the circumstances presented. <u>Billington</u>, 292 F.3d 1177, 1188-89 (9th Cir. 2002).

Therefore, based on the actual circumstances presented in the video and audio tape, the Court finds the actions of Deputy Hoodman were reasonable as evaluated under the factors set forth in <u>Billington</u>.[2]  The situation became tense, uncertain and repidly evolving and the deputy had to make a split second decision to use a non-lethal means to arrest the Plaintiff.  Having found the firing of the non-lethal taser was reasonable, the

---

[2]Plaintiff submitted the affidavit of D.P. Van Baricom to claim that there is a genuine issue of material fact regarding whether or not the deputy's actions were reasonable and to argue that the issue should be decided by a jury.  Under the relevant case law, it is the job of the Court to view the undisputed facts from the tape and apply the factors set forth in <u>Billington</u> to determine if there are genuine issue of fact regarding whether the deputy acted reasonably.  The Court finds the expert's opinion is insufficient to create a genuine issue of material fact as to objective reasonableness in this particular case where the investigation and arrest were recorded.

Court finds there was not a constitutional violation of unlawful seizure and excessive force and the qualified immunity analysis ends.  Defendants' motion for summary judgment on Plaintiff's §1983 claims and constitutional claims for unreasonable search and seizure and excessive force should be granted.

Moreover, had the Court found it necessary to determine the immunity question, it would have concluded that Deputy Hoodman's  use of force did not violate Plaintiff's clearly established rights. See  Johnson v. County of Los Angeles, 340 F.3d 787, 794 (9th Cir. 2003) (explaining "the concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct . . . and [the Defendant officer] reasonably could have believed that his conduct was lawful under the circumstances"); Beaver, 507 F. Supp. 2d 1137 (W.D. Wash. 2007) (use of taser first three times did not violate constitutional rights and use of taser fourth and fifth time was a violation, but law was not clearly established).

C.  Equal Protection Pursuant to the Fourteenth Amendment

In reviewing the facts of this case in alight most favorable to Plaintiff, the Court finds there are no facts to support a violation of the Equal Protection Clause of the Fourteenth Amendment.  Moreover, Plaintiff appears to no longer claim relief under this Constitutional claim and is instead focusing on the unlawful seizure and excessive force claim. Accordingly, this claim must be dismissed.

D. Substantive Due Process Pursuant to the Fourteenth Amendment

The United States Supreme Court has eliminated substantive due process claims in the context of Fourth Amendment cases.  Graham v. Connor, 490 U.S. 386 (1989). Accordingly, the Defendants are entitled to summary judgment on the alleged substantive due process claims.


Defendants Gem County and Sheriff Short

In addition to naming the investigating deputy, Plaintiff has also named as Defendants Gem County and Sheriff Short.  Since Plaintiff has sued Defendant Short in his official capacity, this is actually a claim against the municipality and will be analyzed the same way as the claim against Gem County.  To make a claim against a municipality for a § 1983 violation, four criteria must be satisfied:

> (1) That [the Plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the Plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation.."

Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).

A municipality may not be held liable under § 1983 solely because it employed a constitutional wrongdoer.  Monell v. Dept. of Social Services, 436 U.S. 658 (1978).

Furthermore, a municipality cannot be held liable under § 1983 where no constitutional violation has occurred. <u>Sweaney v. Ada County</u>, 119 F.3d 1385, 1392 (9th Cir. 1997).

Having determined that Deputy Hoodman did not violate Plaintiff's Constitutional rights, the Court need not analyze the claims against Defendants Gem County or Sheriff Short because neither a municipality nor a supervisor can be held liable under § 1983 where no constitutional violation has occurred.  Therefore, Defendants Gem County and Sheriff Short are also entitled to entry of summary judgment in their favor. <u>See</u> <u>Sweaney</u>; <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 653-54 (9th Cir. 2001): <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986);


Negligence Claim

In Plaintiff's Complaint, McMillian avers that the Defendants breached a duty of care to exercise reasonable care and to follow reasonable proper police procedures. Specifically, Plaintiff submits Deputy Hoodman was negligent by: 1)  attempting to arrest Plaintiff without training or ability necessary to avoid use of deadly force; 2) using excessive force grabbing, shoving, twisting Plaintiff's arms and then shooting Plaintiff with a taser gun; 3) attempting to arrest Plaintiff without following department policy and procedure; 4) negligently resorting to a weapon that could cause deadly force or bodily injury when such force was not required; 5) failure to recognize Plaintiff's dazed and disoriented state; 6) failing to timely notify dispatch of he need for backup; and 6) failing

to recognize Plaintiff's medical condition and ignoring Plaintiff's pleas to defer to that condition.

Defendants argue the negligence claim should be dismissed as Plaintiff is seeking to circumvent the statutory immunity for an assault and battery claim under Idaho Code § 6-904(3) which requires a showing of malice or criminal intent on the part of the governmental employee. Here, Defendant argues, there are no facts to support a finding of malice or criminal intent on the part of Deputy Hoodman. The Plaintiff does not rebut this argument. Defendant also argues Plaintiff cannot avoid immunity by pleading the claim for assualt and battery as a negligence claim. The Court agrees and relies on White v. University of Idaho, 797 P.2s 108 (1990).

In Plaintiff's supplemental briefing, he argues that the claim for negligence is different from a claim of assault and battery in that negligence requires a breach of duty. Kessler v. Barowsky, 931 P.2d 641, 648 (1997). Plaintiff states the alleged breach of duty in this case is the duty of a police officer not to subject the person being arrested to any more force or restraint than is necessary. This Court does not adopt such a broad duty. Rather, the duty is more properly stated as a police officer must not use excessive force in arresting a person and the officer's conduct must be reasonable in light of the circumstances presented. A police officer's conduct need not be the "least intrusive means," but only need to be "within that range of conduct ... identif[ied] as reasonable." Billington v. Smith, 292 F.3d 1177, 1188-89 (9th Cir. 2002). This Court has found

Deputy Hoodman's actions were reasonable and did not rise to the level of excessive force under the Constitution.  Therefore, there has been no breach of duty as a matter of law and the negligence claims must be dismissed.


Motions to Strike

The Court finds the Plaintiff's supplemental briefing and affidavit to be relevant and will consider the same.  The motions to strike are denied.

Order

Being fully advised in the premises, the Court hereby orders that:

1)  Defendants' Motion for Summary Judgment (Docket No. 29) is GRANTED.

2) Defendants' Motion to Strike Supplemental Memorandum (Docket No. 28) is DENIED.

3) Defendants' Motion to Strike Affidavit of Van Blaricom (Docket No. 39) is DENIED.

DATED:  **November 25, 2008**

Honorable Edward J. Lodge
U. S. District Judge